UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.P., a minor by and through his Guardian Ad Litem, ALICE PLUMMER, and ALICE PLUMMER Individually,<br><br>Plaintiffs,<br><br>v.<br><br>McKESSON CORPORATION and SMITHKLINE BEECHAM CORPORATION D/B/A, GLAXOSMITHKLINE, and DOES 1 through 100, inclusive,<br><br>Defendants. | No. 2:13-cv-02207-TLN-DAD<br><br>**ORDER** |

This matter is before the Court on a Motion to Remand filed by Plaintiffs J.P., a minor by and through his guardian ad litem, Alice Plummer ("Plaintiffs"). (ECF No. 6.) For the reasons set forth below, Plaintiffs' motion is GRANTED and the action is REMANDED.

**BACKGROUND**

This action asserts claims predicated on Plaintiff Alice Plummer's alleged use of paroxetine hydrochloride ("Paxil"). Paxil is a prescription anti-depressant manufactured by Defendant GlaxoSmithKline LLC ("GSK")[1] and allegedly packaged, marketed, distributed,

---

[1] GSK is formerly known as SmithKline Beecham Corporation d/b/a GlaxoSmithKline. (Notice of Removal, ECF No. 1 at 2)

1

promoted, and sold by Defendant McKesson Corporation ("McKesson"). Plaintiff Alice Plummer alleges her ingestion of Paxil during her pregnancy with Plaintiff J.P. caused serious birth defects and injury to him including left ventricular hypertrophy and pulmonary stenosis. (ECF No. 1 at 7.) Plaintiffs seek past and future economic damages, including medical expenses, loss of earnings and impaired earning capacity, and mental and emotional distress. (ECF No. 1 at 4.)

Plaintiffs filed their complaint in Sacramento County Superior Court alleging various theories sounding in negligence, strict liability, failure to warn, breach of express and implied warranties, fraud and deceit, negligent misrepresentation, and violations of California's unfair competition law, false advertising law, and Consumer Legal Remedies Act. Defendant GSK removed the action to this Court on the basis of diversity jurisdiction. (ECF No. 1.) Plaintiffs then filed the instant motion to remand. (ECF No. 6.)

**LEGAL STANDARD**

A defendant may remove an action from state court to federal court if it was a case of which the district court would have original jurisdiction. 28 U.S.C. § 1441(a). There are two bases for federal subject matter jurisdiction: (1) federal question jurisdiction under 28 U.S.C. § 1331, and (2) diversity jurisdiction under 28 U.S.C. § 1332. A district court has diversity jurisdiction "where the matter in controversy exceeds the sum or value of $75,000, . . . and is between citizens of different states." *Id.* at § 1332(a)(1). Complete diversity of citizenship requires each plaintiff to be a citizen of a different state from each defendant. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).

"[O]ne exception to the requirement of complete diversity is where a non-diverse defendant has been 'fraudulently joined[ ]'" to defeat diversity. *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001); *see also McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987). Allegations of fraudulent joinder can succeed only on a showing that the "plaintiff fails to state a cause of action against [the] defendant, and the failure is obvious according to the well-settled rules of the state[.]" *United Computer Sys., Inc. v. AT & T Corp.*, 298 F.3d 756, 761 (9th Cir. 2002) (citing *Morris*, 236 F.3d at 1067); *McCabe*, 811 F.2d at 1339.

The removing defendant has the burden to show that the nondiverse defendant is a sham or was fraudulently joined by "clear and convincing" evidence. *Hamilton Materials, Inc. v. Dow Chemical Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007).

Fraudulent joinder is not evaluated under the more exacting *Iqbal*/*Twombly* pleading standards. Rather, courts employ the pre-*Twombly* "no set of facts" standard of *Conley v. Gibson*, 355 U.S. 41 (1957), to determine whether under the facts alleged, the plaintiff can state a claim for relief for purposes of determining fraudulent joinder. *Wong v. Michaels Stores, Inc.*, No. 1:11-cv-00162 AWI JLT, 2012 WL 718646, at *5 (E.D. Cal. Mar. 5, 2012) ("*Twombly* and *Iqbal* clarify the federal pleading standard set forth by Rule 8(a) but make no comment as to the propriety of pleading under California law. For this reason, courts have refused to apply the *Twombly* and *Iqbal* standards to determine whether a defendant was fraudulently joined."); *accord Velasquez v. HMS Host USA, Inc.*, No. 2:12-cv-02312-MCE-CKD, 2012 WL 6049608, at *3 (E.D. Cal. Dec. 5, 2012).[2]

In determining whether a defendant was joined fraudulently, the courts must resolve "all disputed questions of fact and all ambiguities in the controlling state law in favor of the non-removing party." *Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 42 (5th Cir. 1992), *cited approvingly in Hamilton Materials*, 494 F.3d at 1206. "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citing *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979)); *see also* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."). Indeed, "the inability to make the requisite decision in a summary manner itself points to an inability of the removing party to carry its burden." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1044 (9th Cir. 2009) (internal quotation marks and citations omitted) (citing *Smallwood v. Illinois Central R.R. Co.*, 385 F.3d 573–74 (5th Cir. 2003)).

---

[2] GSK argues that the Ninth Circuit has not adopted a "no possibility" standard for fraudulent joinder analyses. While the Ninth Circuit may not have expressly adopted this language, GSK does not argue how the standard articulated in *Hamilton Materials* differs from the "no possibility" standard articulated by the federal courts in the Eastern District of California.

**ANALYSIS**

The amount in controversy and the parties' citizenship are not in dispute. The parties agree that Plaintiffs seek well in excess of $75,000; Plaintiffs are domiciled in California, Defendant GSK is a citizen of Delaware, and Defendant McKesson is a citizen of Delaware and California. (ECF No. 1 at 5.) Therefore the only issue is whether McKesson is a proper defendant. The parties agree that if McKesson is a proper defendant, then diversity of citizenship would not exist. However, GSK claims that McKesson is fraudulently joined and therefore can be disregarded for diversity of citizenship purposes.[3]

**A.     GSK's Argument that Plaintiffs' Complaint is Factually Inadequate**

GSK argues that Plaintiffs' claims against McKesson have no factual basis because (1) Plaintiffs do not adequately plead McKesson's involvement in the distribution of Paxil because their allegations are directed at "Defendants" in general; and (2) Plaintiffs' allegations are improperly based upon information and belief whereas California pleading standards require Plaintiffs to name Doe defendants when Plaintiffs do not have a sufficient basis to identify the actual entity.

1.     <u>Allegations Against Defendants Generally</u>

GSK argues that there are no "material allegations against McKesson" and that Plaintiffs do not adequately plead McKesson's involvement in the distribution of Paxil because their allegations are directed at "Defendants" in general and are improperly based upon information and belief. However, the fact that allegations refer to Defendants generally does not prevent the Court from finding that there is a possibility that Plaintiffs could prevail on a claim against McKesson. *Oliver v. McNeil-PPC, Inc.*, No. 1:12-cv-01865-AWI-SAB, 2013 WL 459630, at *6 (E.D. Cal. Feb. 4, 2013); *see Smith v. Southern Pac. Co.*, 187 F.2d 397, 401 (9th Cir. 1951) ("No specific charge in the complaints refer to [defendant] alone.  We have no doubt that the

---

[3] Because GSK contends that McKesson is improperly joined, its consent to the removal is not required. *See* 28 U.S.C. § 1441(b); *see also Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1193 at n.1 (9th Cir. 1988) ("[A]ll defendants in a state action must join in the petition for removal, except for nominal, unknown or fraudulently joined parties."); *Hewitt v. City of Stanton*, 798 F.2d 1230, 1233 (9th Cir. 1986) (holding co-defendants who are fraudulently joined need not join in a removal).

1  complaints as they stand would be subject to a motion to make more definite and certain.  But this
2  is not the test in removal cases.").  Here, Plaintiffs allege that McKesson distributed the Paxil
3  ingested by Alice Plummer, and that "Defendants knew or should have known that Paxil could be
4  dangerous and unsafe for pregnant women and the developing fetus[,]" and "Defendants failed to
5  adequately warn doctors[.]"  (ECF No. 1-1 at 9, 13.)  Therefore, the claims Plaintiffs allege
6  generally against all Defendants are viable under California law.  Since Plaintiffs can possibly
7  establish liability against McKesson, joinder is not fraudulent on the grounds that claims were
8  alleged against "Defendants" generally.

### 2. Allegations Based on Information and Belief

GSK notes that Plaintiffs state upon information and belief that McKesson distributed the Paxil ingested by Alice Plummer and contends that Plaintiffs fail to assert facts supporting this contention.  GSK argues that simply stating "upon information and belief" fails to state a claim.  Specifically, GSK asserts that the "Plaintiff fails to plausibly allege facts indicating that McKesson distributed the Paxil at issue in the case."  (ECF No. 16 at 7.)  Additionally, GSK asserts that "Plaintiff's claim against McKesson is based solely on speculation and does not plausibly allege that McKesson distributed Paxil allegedly taken by Alice Plummer."  (*Id.*)  However, GSK's argument incorrectly applies the *Twombly* and *Iqbal* plausibility standard.  As stated above, the correct standard for reviewing remand is the "no set of facts" standard as set out in *Conley*.  GSK has completely failed to demonstrate how the *Conley* standard applies in this case and as such fails to present a valid argument against Plaintiffs' pleading.

Assuming the rest of GSK's argument meets the applicable standard under *Conley*, the fact that a plaintiff's allegations are based on information and belief does not prove that the complaint fails to state a claim.  *See Oliver*, 2013 WL 459630, at *6.  Moreover, a "plaintiff may allege on information and belief any matters that are not within his personal knowledge, if he has information leading him to believe that the allegations are true."  *Doe v. City of Los Angeles*, 42 Cal. 4th 531, 550 (2007).  Plaintiffs sufficiently allege McKesson's possible involvement by stating "McKesson packaged, marketed, distributed, promoted and sold Paxil in California and in Elk Grove," and "[u]pon information and belief, McKesson supplied the Paxil pills ingested by

Alice Plummer that caused injury to Jacob Plummer." (ECF No. 1-1 at 3.) Additionally, the knowledge of whether or not McKesson supplied Alice Plummer the Paxil she allegedly ingested is not within Plaintiffs' control. Thus, Plaintiffs adequately assert claims against McKesson.

GSK further argues that California pleading standards require Plaintiffs to name Doe defendants instead of actual entities when Plaintiffs do not have a sufficient basis to identify the actual entity. GSK relies on the California Supreme Court's holding in *Bockrath v. Aldrich Chemical Co., Inc.*, 21 Cal. 4th 71, 81 (1999), that if a plaintiff does not have enough information to allege that a particular injury-causing toxin was manufactured or supplied by a specific entity, the complaint must name Doe defendants. However, Defendants appear to have ignored the remainder of the *Bockrath* case. Specifically, *Bockrath* goes on to state that a plaintiff should only identify defendants by fictitious names when the plaintiff is ignorant of those who allegedly caused him harm and not when the plaintiff asserts they know the entity's identity. *Id.* at 83. Plaintiffs allege they are not ignorant of the name of the entity they believe caused their injury. Therefore, Plaintiffs were not required to use a fictitious name and did in fact properly allege "upon information and belief" that McKesson supplied the Paxil.

**B.   GSK's Argument that Plaintiffs' Complaint Lacks an Adequate Legal Basis**

GSK further argues that Plaintiffs' claims against McKesson have no legal basis because (1) they cannot state a claim for failure to warn, (2) no duty to warn exists based on the learned intermediary doctrine, and (3) federal law preempts Plaintiffs' failure to warn claim because McKesson could not legally change the labeling.[4]

1.   Failure to Warn

GSK asserts that Plaintiffs fail to state a claim for failure to warn because McKesson as a

---

[4] GSK also argues that Alice Plummer's claims are barred by a two-year statute of limitations in its Notice of Removal (but omits discussion of the issue in its opposition to Plaintiffs' motion to remand). Even if the statute of limitations issue was properly before the Court (and it is not clear that it is), the Court is still not persuaded by GSK. Although a successful statute of limitations defense may demonstrate a sham defendant, *see Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1319 (9th Cir. 1998), GSK fails to provide any supporting evidence that Alice Plummer should have discovered J.P.'s injuries were caused by wrongdoing earlier than she did. Without more, this is insufficient to meet GSK's burden to show clear and convincing evidence of fraudulent joinder. *See Hamilton Materials*, 494 F.3d at 1206.

distributor of prescription medications does not owe a duty to warn and, thus, cannot be held strictly liable for injuries caused by a defective product. In their opposition, GSK relies on comment k of the Restatement (Second) of Torts § 402A by arguing that comment k precludes distributors of prescription drugs from strict liability.[5] (ECF No. 16 at 12 (citing *Skinner v. Warner Lambert Co.*, Case No. CV 03 1643-R (RZx), 2003 WL 25598915 (C.D. Cal. Apr. 28, 2003)).) Comment k of the Restatement (Second) of Torts Section 4024 provides:

> There are some products which, in the present state of human knowledge, are quite incapable of being made safe for their intended and ordinary use. These are especially common in the field of drugs. . . . The seller of such products, again with the qualification that they are properly prepared and marketed, and proper warning is given, where the situation calls for it, is not to be held to strict liability for unfortunate consequences attending their use, merely because he has undertaken to supply the public with an apparently useful and desirable product, attended with a known but apparently reasonable risk.

However, comment k does not explicitly reference distributors, but instead refers to manufacturers and sellers. Other federal courts acknowledge that there is no California law that precludes distributors from strict liability. *See Mendez v. AstraZeneca Pharmaceuticals LP*, No. 1:12-CV-00535-LJO-DLB, 2012 WL 1911382, at *2 (E.D. Cal. May 25, 2012) ("California Courts have yet to address the liability of distributors and other potential defendants in the commercial chain in prescription drug cases."); *Hinds v. Zimmer, Inc.*, No. 1:09cv0442 AWI DLB, 2009 WL 1517893, at *4 (E.D. Cal. June 1, 2009) ("[U]nder California law, both a manufacturer and a distributor can be strictly liable for injuries caused by a defective product."). Therefore, GSK cannot show that this claim fails according to well-settled state law, and the Court refuses GSK's invitation to extend comment k to distributors at this juncture.

Even if comment k applied to distributors, comment k qualifies that liability is avoided only if the drug is properly prepared and marketed. Restatement (Second) Torts § 420A cmt. k (1977). Here, Plaintiffs assert that the drug was *not* properly marketed or labeled, which

---

[5] Plaintiffs argue in their reply that GSK waived its argument that comment k precludes distributors of prescription drugs from strict liability. (ECF No. 19 at 9.) Because the Court finds that GSK's argument is unpersuasive it need not decide whether GSK forfeited this argument by failing to raise it in its Notice of Removal.

precludes GSK's argument that comment k prevents McKesson from being strictly liable. (ECF No. 1-1 at ¶ 71.)

GSK further asserts that as a distributor McKesson cannot be held strictly liable because it does not meet the three factors necessary under *Bay Summit* to establish liability. (ECF No. 16 at 11 (quoting *Bay Summit Cmty. Ass'n v. Shell Oil Co.*, 51 Cal. App. 4th. 762, 776 (1996).) Under California law, a defendant involved in the marketing/distribution process may be held strictly liable if the following three factors are present: "(1) the defendant received a direct financial benefit from its activities and from the sale of the product; (2) the defendant's role was integral to the business enterprise such that the defendant's conduct was a necessary factor in bringing the product to the initial consumer market; and (3) the defendant had control over, or a substantial ability to influence, the manufacturing or distribution process." *Bay Summit*, 51 Cal. App. 4th at 776.

GSK asserts that "[n]one of the three factors required to impose liability on a defendant outside the chain of distribution are met." (ECF No. 16 at 12.) However, GSK does not provide any evidence, much less clear and convincing evidence, that the *Bay Summit* factors are not met. *Compare Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1068 (9th Cir. 2001). ("[F]raudulent joinder claims may be resolved by 'piercing the pleadings' and considering summary judgment-type evidence such as affidavits and deposition testimony.") (internal citations and quotation marks).[6] For example, GSK merely states that McKesson "did not play an 'integral' role in bringing paroxetine to the market," without providing any support that would establish why McKesson was not an integral party. (ECF No. 16 at 12). Therefore, GSK has not shown that it is obvious under "well-settled" California law that McKesson could not be held strictly liable for failure to warn and the Court is obligated to resolve this issue against removal.

2. <u>Learned Intermediary Doctrine and Federal Preemption</u>

GSK argues that the learned intermediary doctrine and federal preemption prevent

---

[6] Furthermore, given California's liberal rules on amendment of pleadings, it is likely that Plaintiffs would be permitted leave to amend their complaint, allowing them to address the deficiencies GSK asserts. *See* Cal. Civ. Proc. Code § 473.

Plaintiffs from asserting claims against McKesson.[7] (ECF No. 16 at 12–13.) Under the learned intermediary doctrine, a prescription drug manufacturer's duty to warn runs to the physician and not the patient. *Conte v. Wyeth, Inc.*, 168 Cal. App. 4th 89, 98 n.5 (2008). "The learned intermediary doctrine is a defense to a cognizable cause of action, which courts do not ordinarily consider in determining fraudulent joinder." *Martin v. Merck & Co.*, No. S-05-750 LKK/PAN, 2005 WL 1984483, at *4 (E.D. Cal. Aug. 15, 2005). Similarly, GSK's argument that Plaintiffs' claims are preempted by federal law that prohibits drug manufacturers from independently changing their drugs' labels is an affirmative defense that goes to the merits of the case and thus does not support removal under the fraudulent joinder analysis. *Hunter*, 582 F.3d at 1045 ("When a defendant asserts that the plaintiff's claim is impliedly preempted by federal law, it cannot be said that the plaintiff's failure to state a claim against the resident defendant is 'obvious according to the settled rules of the state.'") (quoting *Hamilton Materials*, 494 F.3d at 1206)). Therefore, because preemption and the learned intermediary doctrine are affirmative defenses and speak to the merits of the case, they do not support GSK's removal.[8]

### C. Costs Under 28 U.S.C. § 1447(c)

The removal statute permits the district court to "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447 (c). Plaintiffs did not request the Defendants' payment of costs; however, GSK's obvious forum shopping and prolonging of the case gives the undersigned pause. Plaintiffs petitioned the Judicial Council of California to coordinate this action with five other cases also seeking relief against Defendants for injuries arising out of plaintiffs' ingestion of Paxil during pregnancy.

---

[7] It is unclear from GSK's briefing whether its argument is that all of Plaintiffs' claims are precluded or only Plaintiffs' failure to warn claims. However, the Court need not decide this issue because, as discussed, the arguments address the merits of the claims, which is an improper consideration at this stage.

[8] GSK also states that it has been subject to hundreds of lawsuits regarding Paxil use in pregnancy and McKesson has only been named in a handful of California lawsuits even though it does business in many other states. (*See* ECF No. 6-1 at 21.) Although the Court agrees with GSK that McKesson's joinder could be intentional in order to defeat diversity jurisdiction, the intent of the parties is not at issue in a fraudulent joinder analysis. *See Briano v. Conseco Life Ins. Co.*, 126 F. Supp. 2d 1293, 1296 (C.D. Cal. 2000) ("[I]t does not have to be shown that the joinder was for the purpose of preventing removal.").

(ECF No. 6-1 at 2:22–24.) Subsequently, GSK attempted to remove all six cases to three separate federal district courts on October 22, 2013. (ECF No. 6-1 at 2:24.) Since then, Plaintiffs have filed several Notices of Supplemental Authorities, in which the district courts have remanded their respective cases to state court. (ECF Nos. 21, 22, 23, 24.) At this time, the Court exercises its discretion not to award costs under § 1447.

## CONCLUSION

For the foregoing reasons, the Court HEREBY ORDERS:

1. Plaintiffs' Motion to Remand (ECF No. 6) is GRANTED. This action is HEREBY REMANDED to the Superior Court of the County of Sacramento.

2. Defendant McKesson's Motion for Judgment (ECF No. 7) is DENIED as MOOT.

3. The Clerk of this Court shall transmit forthwith a certified copy of this order to the Clerk of the Superior Court and close this case.

**IT IS SO ORDERED.**

Dated: August 6, 2014

Troy L. Nunley
United States District Judge